BaeNet, J.,
delivered the opinion of the court.
This suit grows out of contracts for the delivery of chambray shirts for the use of the Army. On June 27, 1906, the depot quartermaster at New York advertised, among other things, for these shirts, to be furnished in accordance with certain standard requirements which had been adopted by the War Department, and which were made known in the specifications attached to the notice to bidders. July 26, 1906, the plaintiffs submitted a bid upon this advertisement, and shortly thereafter furnished the Quartermaster General with a sample of the shirts proposed to be furnished by them under their said bid. This sample was not in strict accordance with the specifications, but was so nearly so that the plaintiffs were informed by the Quartermaster General that shirts furnished conforming to it would be accepted under the specifications.
Following this preliminary and on August 16, 1906, the plaintiffs'entered into a contract to furnish (among other *175 articles) 140.000 chambray shirts to the Government for cents each, such “shirts to be manufactured from material conforming to sample submitted in bid of Brill Bros, (plaintiffs), a sealed sample of which is on file at the New York depot.”
The plaintiffs were unable to make deliveries of the shirts as fast as called for under the contract, whereupon the defendants took advantage of a provision in the contract in that contingency and advertised for bids to supply such delinquency, which advertisement called for the same quality of shirts as were specified in the original advertisement. In response to this call the C. Kenyon Co. submitted a bid to supply shirts in accordance with the advertisement for 58 cents each and was awarded the contract. This company supplied the delinquency by the delivery of 30,375 shirts, -for which they were paid the contract price of 58 cents each, and the excess over the plaintiffs’ contract price, 8-.} cents per shirt, or a total of $2,591.71, was charged against the plaintiffs and ultimately deducted from payments due them for other shirts furnished under this contract. This suit is brought to recover the sum so deducted, together with a balance of $116.69 concededly due the plaintiffs and a tender of which was refused.
It is contended by the plaintiffs that the Government in filling the delinquency wrongfully advertised for a more expensive material than that called for in their contract. It must be conceded, however, that the shirts called for in the advertisement on which the contract with the C. Kenyon Co. was based were identical in description with those called for in the advertisement on which the contract with the plaintiffs was based. It is true that the sample submitted by the C. Kenyon Co. differed somewhat from the description contained in the specifications attached to the advertisement, and which sample was accepted in executing the contract; but such sample was submitted as a substantial compliance with the specifications and was so accepted, the War Department stating that it was inferior in some particulars and superior in others. The Quartermaster General accepted the article furnished by the plaintiffs as a substantial compliance with the specifications, and we see no good *176 venson why they should complain because the same liberality was shown to the C. Kenyon Co. In short, both parties bid upon the same specifications, and neither entered into a contract strictly in accordance with these specifications. Their bid having been accepted under these specifications, why should the plaintiffs ask for different specifications to be advertised in case of their delinquency ?
• It appears in evidence that the article called for in the advertisements of the Government was exceedingly difficult to procure, which was doubtless the reason that in both instances a somewhat different sample was accepted as a substantial compliance, and it nowhere appears that the sample upon which the contract with the C. Kenyon Co. was based was more expensive than that upon which the plaintiffs’ contract was based. Hence we do not see how they can be said to- have suffered loss in this substitution for their delinquency.
• The evidence tends to prove that the shirts furnished by the C. Kenyon Co. under its contract were identical in texture with those furnished by the plaintiffs under their contract. Admitting this to be true we do not see how it helps the plaintiffs’ case. On the contrary, if such shirts were accepted from the C. Kenyon Co. as a substantial compliance with the contract, that would tend to show that such contract was not unfavorable to the plaintiffs. The difference in price might well be accounted for by the smaller quantity which the C. Kenyon Co. agreed to furnish or other conditions of which we are not advised.
In this connection it should be noted that Article VIII of the plaintiffs’ contract, which allowed substitution by purchase elsewhere in case of the delinquency of the contractors, provided that the articles so procured should “be the kind herein specified as near as practicable.” When we consider that the plaintiffs’ sample, though somewhat different, was accepted as a substantial compliance with the specifications, and that the C. Kenyon Co. was treated in the same manner, we are compelled to the conclusion that the Government in exercising its right under said article in no way wronged the plaintiffs.
*177 As before stated, it is conceded that there is a balance of $116.69 due the plaintiffs, and judgment is ordered for them in that sum. The petition is otherwise dismissed.